## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **IN THE MATTER OF THE SUBPOENA**<br>**ISSUED TO DOUGLAS GELLER** | : Miscellaneous Case No. 05-9068<br>:<br>: (No. 03-11465-DPW District Court of<br>: Massachusetts) |

## VERMONT PURE HOLDINGS, LTD.'S MEMORANDUM
## IN OPPOSITION TO DEFENDFANT'S MOTION FOR PROTECTIVE
## ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(c)(4).

Vermont Pure Holdings, Ltd. ("Vermont Pure") respectfully submits this Memorandum in Opposition to Defendant's Motion for a Protective Order Pursuant to Federal Rule of Civil Procedure 26(c)(4).

## INTRODUCTION

This matter concerns a third-party subpoena, issued from this Court on January 7, 2005, in aid of litigation pending in the United States District Court for the District of Massachusetts between Plaintiff, Vermont Pure, and Defendant, Nestlé Waters North America, Inc. ("Nestlé"). On March 18, 2005, Nestlé moved this Court for a protective order, prohibiting Vermont Pure from receiving, or even soliciting testimony about, one particular document covered by the subpoena, a document it calls the "Caswell Report." Nestlé's motion, filed almost two months after the scheduled date for the discovery in question, is untimely and, under the Federal Rules of Civil Procedure, must be denied.

Even if it were timely, however, Nestlé's motion is meritless. First, although Nestlé demands an order *completely* forbidding Vermont Pure from *any* sort of discovery relating to the Caswell Report, it never bothers to address whether the Caswell Report is relevant to the claims

and defenses in the underlying litigation.  That is most likely because (although neither the Court nor Vermont Pure have been permitted to see it), according to Nestlé's counsel's own characterizations of the report, it is quite germane to the underlying case.  Second, in attempting to meet its burden of proving "good cause" for the protective order, Nestlé asserts interests that are not its own.  Nestlé cannot rely on those third-party interests to show "good cause."  Finally, Nestlé has not substantiated the only concern of its own that it raises—confidentiality.  Even if it had, confidentiality does not justify a protective order precluding *all* inquiry into the Caswell Report, under Rule 26(c)(4).  Rather, at best, confidentiality justifies an order, under Rule 26(c)(2) & (7), maintaining the confidentiality of the discovery.  Nestlé inexplicably fails to disclose to the Court, however, that the court in the underlying litigation *already entered such an order*, which empowers Nestlé to effect the only protection it has even come close to justifying before this Court.  In short, Nestlé's motion simply does not justify the remedy it seeks.

## I.  FACTUAL BACKGROUND[1]

The underlying litigation is a Lanham Act case.  Vermont Pure alleges that, for years, Nestlé, which sells the popular "Poland Spring" bottled water, has engaged in false, deceptive, and misleading advertising of Poland Spring water.  Specifically, Vermont Pure alleges that Nestlé has made repeated false assertions in advertisements about the sources of Poland Spring water, including statements about the identity, the number, the purity, the location of those sources; the environment surrounding those sources; how water is taken from those sources, and the purity of Poland spring water itself.

---

[1]     Vermont Pure hereby incorporates the Statement of Facts set forth in its Memorandum in Support of its Motion to Compel Production of Documents from and Deposition of Douglas Geller.

As Nestlé recognizes, during the time at issue in the underlying case, Douglas Geller was a Senior Hydrogeologist for Atlantic Geoscience Corporation ("Atlantic Geoscience"), an outside consultant for Nestlé. (Nestlé's Mem. Opp'n Vermont Pure's Mot. Compel at 2.) Through Atlantic Geoscience, Mr. Geller performed hydrogeological consulting services with respect to a water source that is now one of the Poland Spring sources at issue in the underlying Lanham Act case. (Id. at 3.) Accordingly, on January 7, 2005, Vermont Pure served Mr. Geller (who is an Oregon resident) with a subpoena, issued from this Court, requiring his deposition and a production of documents relating to his work for Nestlé. (See Vermont Pure's Mem. Supp. Mot. Compel Ex. A.) The deposition was scheduled for January 26, 2005, and Vermont Pure immediately served Nestlé with a notice of the deposition.

Nestlé did not, prior to the scheduled January 26th deposition, or for nearly two months after, employ either of the tools available to it, under the rules, to contest third-party discovery— i.e., moving to quash the subpoena or for a protective order. Instead, ex parte and off-the-record, Nestlé simply threatened Mr. Geller with litigation with respect to his planned production of the Caswell Report. (See Vermont Pure's Mem. Supp. Mot. Compel Ex. B.) Nestlé's failure to assert its alleged rights and formally challenge the subpoena left Mr. Geller in an impossible position—between an unchallenged subpoena and a threat of private litigation should he comply with it. In the meantime, Nestlé's counsel purchased plane tickets and signaled his intention to attend Mr. Geller's January 26, 2005 deposition in Portland. It was only Mr. Geller's eleventh-hour capitulation to Nestlé's behind-the-scenes threats that postponed the deposition. (See Vermont Pure's Mem. Supp. Mot. Compel Ex. C.)

Meanwhile, in the underlying case, counsel for Vermont Pure and Nestlé negotiated the terms of a routine "Stipulation and Order of Confidentiality" to govern all discovery in the case.

In addition to the usual terms, counsel for Nestlé specifically demanded that it have the power to designate as confidential any document produced by any person, not just documents produced by Nestlé.  Counsel for Nestlé specifically stated that it required such protection to maintain the confidentiality of third-party discovery such as that which would be forthcoming from Mr. Geller.  (Ex. A, Gowen Decl. ¶ 3–6.)  On March 14, 2005, the court in the underlying case entered the proposed protective order, which contained the language requested by Nestlé (the "Protective Order").  (See Ex. B at ¶ 11 ("Either party may designate information received by the other party from a non-party during the course of this action as "CONFIDENTIAL" or HIGHLY CONFIDENTIAL.").)

Hoping to avoid moving this Court to compel Mr. Geller's compliance with the subpoena, Vermont Pure's counsel suggested to Nestlé's counsel that Mr. Geller release the Caswell Report to the court in the underlying case, with all parties stipulating to that court's jurisdiction and agreeing to abide by its decision.  Nestlé refused, forcing Vermont Pure to move to compel Mr. Geller's compliance with the subpoena.  (See Ex. C, Feb. 8. 2005 letter from K. Berry to J. Garrod.)  It was only at this point, that Nestlé filed the instant motion for a protective order.

## II.    ARGUMENT

### A.    Nestlé's Motion is Time-Barred.

Both equity and the law mandate the denial of Nestlé's motion for a protective order as untimely.  A party bringing a motion for a protective order must do so before the time to respond to discovery arrives.  See Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc., 200 F.R.D. 255, 259 (M.D.N.C. 2001); Nestlé Foods Corp. v. Aetna Cas. & Sur. Co., 129 F.R.D. 483, 387 (D.N.J. 1990) (denying motion for protective order, in part, because defendant waited more than

two months to move); <u>United States v. Int'l Bus. Mach. Corp.</u>, 70 F.R.D. 700, 701 (S.D.N.Y.

1976) (holding that motions under Rule 26(c) are untimely when made after the date set for the

discovery at issue). Thus, in the case of a deposition, a party must bring a motion for a

protective order prior to the date of the deposition.

 Nestlé missed the mark by almost two months. Nowhere in its Motion for a Protective

Order does Nestlé address the fact that it received notice of Mr. Geller's deposition on January 7,

2005. Nor does it offer an explanation as to its failure to seek a protective order prior to January

26, 2005, the scheduled date of Mr. Geller's deposition. This seems all the more remarkable

given Nestlé's supposed concerns, as articulated in its motion, about Mr. Geller's alleged

contractual and statutory liability. In fact, Nestlé appears to have ignored the power of this

Court's subpoena entirely, acting only after Vermont Pure moved to compel. Nestlé's failure to

bring its Motion for a Protective Order in a timely manner prohibits it from doing so now.

 Nestlé also fails to explain what it did with the time instead. While months elapsed in

Oregon, Nestlé successfully applied (jointly with Vermont Pure) to the Massachusetts court for

the Protective Order, including its own provision addressing Mr. Geller's deposition and

document production. This Court should not condone Nestlé's failure to assert its alleged rights

in a timely fashion, especially given that it has secured the necessary protection of those alleged

rights from the court in the underlying case. Rather, this Court should deny Nestlé's motion for

a protective order as untimely.

 **B.** **Nestlé Has Not Met Its Burden of Demonstrating That**
   <u>**"Good Cause" Exists For the Entry of a Protective Order.**</u>

 Even if it were timely, Nestlé's motion fails on its merits. "There is a general

presumption that pretrial discovery is 'accorded a broad and liberal treatment.'" <u>Huson v. City</u>

of Forest Grove, Civil No. 01-817-FR, 2002 U.S. Dist. LEXIS 476, at \*2 (D. Or. Jan. 2, 2002) (quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947)).  The court's discretion to enter a protective order is "limited by the careful dictates of [Rule] 26."  Procter & Gamble Co. v. Bankers Trust Co., 78 F.3d 219, 227 (6th Cir. 1996).  Rule 26(c) allows protective orders only if "justice requires," and only upon the movant's showing of "good cause."  Fed. R. Civ. P. 26(c); see also Foltz v. State Farm Mut. Ins. Co., 331 F.3d 1122 (9th Cir. 2003) (finding that party seeking a protective order must show, for each particular document it seeks to protect, that specific prejudice or harm will result if protective order is not granted).  To meet this burden, a party seeking a protective order must support its claim through particular and specific facts. Rivera v. Nibco, Inc., 364 F.3d 1057, 1063 (9th Cir. 2004).  Nestlé has failed to meet its burden.

**1.      Nestlé has not even bothered to argue that the Caswell
Report is irrelevant to the claims and defenses in the underlying case.**

First, Nestlé does not even address the threshold issue in any motion for protective order—relevance.  A protective order involves the weighing and balancing of competing interests.  Obviously, the relevance of the Caswell Report and Vermont Pure's right to discovery must be weighed against any countervailing interests, and an appropriate balance struck.  See Smith v. Goord, 222 F.R.D. 238, 243 (N.D.N.Y. 2004) (holding that potentially relevant information would not be withheld on the basis of confidentiality; "[i]nstead, those inherently conflicting considerations must be weighed, and a balance which seeks to accommodate both concerns struck").  Because it is overreaching for an order *barring* discovery into the Caswell report, on top of the confidentiality provisions contained in the Protective Order already in place, Nestlé casually states that the Caswell Report is "totally irrelevant" and has an "utter lack of relevance."  (Nestlé's Mem. Supp. Mot. Protective Order at 2.)  Despite the extreme remedy it

seeks, however, Nestlé never argues or explains why this is true, and it does not offer a meaningful description of either the Caswell Report or the claims in the case.

Even based on Nestlé's minimal characterizations of the Caswell Report, it is clearly relevant to the underlying case. Again, Vermont Pure's claims concern Nestlé's false advertising about the identity, number, location, and purity of the sources for Poland Spring water and the environment surrounding and the extraction of water from those sources. Nestlé concedes that the Caswell Report (which neither the Court nor Vermont Pure has seen) is titled "Hydrogeologic Evaluation of Poland Spring Source Wells" and describes one of the sources for Poland Spring water. (Nestlé's Mem. Opp'n Vermont Pure's Mot. Protective Order ¶¶ 2–3, at 2.) Thus, the very title of this document indicates that it relates directly to the sources of Poland Spring water. Nestlé's counsel even concedes that the Caswell Report concerns the "location" of one of the sources for Poland Spring water, which is one of the issues in the underlying case. (See Garrod Aff. ¶ 8.)

Despite the facially-apparent relevance of the Caswell Report, Nestlé is asking this Court to accept Nestlé's own determination that the Caswell Report is "totally irrelevant" to Vermont Pure's claims and to bar Vermont Pure completely from *any* inquiry into this document. To make matters worse, Nestlé refused to submit this dispute to the court in the underlying case, which is best equipped to balance relevance and countervailing interests. By failing to address this issue before this Court, which is a stranger to the underlying litigation, Nestlé has failed to meet its burden of showing "good cause" for what it asks the Court to do.

## 2.   Nestlé lacks standing to raise Mr. Geller's interests.

Further underscoring its inability to demonstrate "good cause," many of the countervailing interests Nestlé raises are not even its own interests. It is well-settled that "'a

party may not move for a protective order to protect the interests of another.'" <u>Am. Rock Salt</u> <u>Co., LLC v. Norfolk S. Corp.</u>, No. 00-CV-6534L(F), 2005 WL 643414, at *30 (W.D.N.Y. Mar. 18, 2005) (quoting Steven Baicker-McKee et al., <u>Federal Rules Civil Handbook</u> 607 (12th ed. 2005)); <u>see also</u> <u>Green v. Baca</u>, No. CV 02-204744MMMMANX, 2005 WL 283361, at *1 (C.D. Cal. Jan. 31, 2005) (holding that a party's ability to contest third-party discovery is limited to objections based on some personal right or privilege relating to the discovery sought). Nestlé's only assertion of "good cause" for a protective order, however, is that disclosure of the Caswell Report would breach a confidentiality agreement between Mr. Geller and Atlantic Geoscience and "expose Geller to a serious risk of liability." (Nestlé's Br. at 3.) Whether Atlantic Geoscience's agreement with Mr. Geller is breached, and whether Mr. Geller is subject to liability, are not concerns of Nestlé and cannot support its motion for a protective order.[2]

   Even if Mr. Geller's plight were Nestlé's to raise, it has wholly misrepresented it.[3] Nestlé conspicuously fails to note that the confidentiality agreement in question contains an express exception for disclosures "required by law," provided that Atlantic Geoscience receive notice (which it obviously did). (<u>See</u> Donohoe Ver. Ex. A at 2.) The court in the case cited by Nestlé, <u>Hasbrouck v. BankAmerica Housing Services</u>, 187 F.R.D. 453 (N.D.N.Y. 1999), expressly <em>distinguished</em> the agreement in that case from an agreement like the one in this case. <u>See id.</u> at 456 (distinguishing <u>Marine Midland Realty Credit Corp. v. LLMD of Michigan, Inc.</u>, 821 F. Supp. 370, 373 (E.D. Pa. 1993) (permitting disclosure pursuant to terms of agreement, that

---

[2]   Nestlé's feigned concern for Mr. Geller's potential liability is especially galling when it is obviously Nestlé that controls whether Mr. Geller is subjected to liability.

[3]   First, as both Mr. Geller and Vermont Pure have noted, it is far from clear that the agreement even applies to Mr. Geller in this context. (Resp. Vermont Pure's Mot. Compel Prod. D. Geller at 2; Vermont Pure's Mot. Leave File Reply Mem., Ex. A at 7–8.)

specified confidentiality "except as required by law or by judicial or administrative process or regulation"); Kalinauskas v. Wong, 151 F.R.D. 363, 367 (D. Nev. 1993) (stating penalties for disclosure are not applicable where agreement permitted court-ordered disclosure); Reiser v. West Co., No. 88-0334, 1988 WL 35916, at *1 (E.D. Pa. Apr. 14, 1988) (refusing to protect information sought where settlement agreement excepted disclosures "pursuant to legal process"). Whether Mr. Geller breached his confidentiality agreement by retaining the Caswell Report in the first place cannot be changed now and is irrelevant. The only relevant question is whether disclosure of the report to Vermont Pure would *further* breach the agreement, which, on the face of the agreement, it would not.

> **3.    Even crediting Nestlé's unsupported
>         confidentiality objection, the Protective Order
>         <u>already in place adequately protects Nestlé's interests.</u>**

Buried amidst its feigned concern for Mr. Geller, Nestlé does argue that the Court "should enter a protective order to ensure that none of [its] confidential information finds its way into the hands of a competitor, such as Vermont Pure" and "asks this Court to prevent the disclosure of [Nestlé's] confidential information." (Nestlé's Br. at 6–7.) Nestlé utterly fails, however, to explain why the Caswell report should be considered confidential, or what injury it would suffer should the report be disclosed. As the cases cited by Nestlé reveal, where a party seeks to protect commercially-sensitive material, it must prove (1) that the information is a trade secret or confidential business information, and (2) that disclosure would cause it cognizable harm. Hasbrouck, 187 F.R.D. at 455.

Nestlé has not even *attempted* to meet this standard. Simply because the Caswell Report may be covered by a blanket, private confidentiality agreement, required by a principal from an agent, does not mean that it is actually confidential. In fact, given that the report concerns the

source of drinking water sold to the public, the reasonable presumption is that the report is *not* confidential. Nestlé's misplaced concerns notwithstanding, the fact that the Caswell Report would be disclosed to Vermont Pure from Mr. Geller, as opposed to Nestlé, is irrelevant with respect to confidentiality. Rather, the question should be whether, if the Caswell Report were in Nestlé's files, it would be required to disclose it. Nestlé has made no showing that the Caswell Report is actually confidential or that disclosure of the Caswell Report would injure Nestlé. In short, Nestlé completely fails to justify its request that this Court abridge the default standards and scope of discovery.

Moreover—and perhaps most importantly—Nestlé's unsubstantiated confidentiality concerns have already been addressed. The Protective Order already in place in the underlying action empowers Nestlé to label the Caswell Report and Mr. Geller's deposition "Highly Confidential," limiting disclosure to Vermont Pure's attorneys. Nestlé specifically demanded that this provision of the Protective Order be extended to third-party discovery to address Mr. Geller's deposition and document production. Thus, all Nestlé need do to protect itself is to designate whatever Mr. Geller produces at the deposition as confidential. In other words, Nestlé has already secured, from the forum court, the only protection that it is even arguably entitled to receive. There is no need to involve this Court to address the potentially sensitive nature of Mr. Geller's deposition and document production.

## III.    CONCLUSION

For the foregoing reasons, Vermont Pure respectfully requests this Court enter an Order: (1) denying Nestlé's Motion for Protective Order; (2) compelling the deposition of and document production from Douglas Geller; and (3) ordering Nestlé to pay the expenses, including

reasonable attorneys' fees, which Vermont Pure incurred in connection with the preparation and filing of this motion, pursuant to Rules 26(c) and 37(a)(4).

Respectfully submitted,

COZEN O'CONNOR

Dated: March 28, 2005

/s/ Kevin F. Berry
Kevin F. Berry, Esquire
*Admitted pro hac vice*
1900 Market Street
Philadelphia, PA  19103
(215) 665-2000

*Attorney for Plaintiff Vermont Pure Holdings, Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I, Kevin F. Berry, hereby certify that on March 28, 2005, I caused to be served a true and correct copy of Vermont Pure Holdings, Ltd.'s Memorandum in Opposition to Defendant's Motion for Protective Order Pursuant to Federal Rule of Civil Procedure 26(c)(4) electronically and via first class mail upon the following parties:

> Benjamin L. Hincks, Esq.
> MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
> One Financial Center
> Boston, MA  02111
>
> Jeffrey M. Garrod, Esq.
> ORLOFF, LOWENBACH, STIFELMAN & SIEGEL, P.A.
> 101 Eisenhower Parkway
> Roseland, NJ  07068-0182
>
> Laura Maffei, R.G.
> SCHWABE, WILLIAMSON & WYATT, P.C.
> PacWest Center, Suites 1600-1900
> 1211 Southwest Fifth Avenue
> Portland, OR  97204-3795
>
> Jay R. Chock
> DUNN CARNEY ALLEN HIGGENS & TONGUE LLP
> 851 SW Sixth Avenue, Suite 1500
> Portland, OR 97204

/s/ Kevin F. Berry
Kevin F. Berry, Esquire

# **EXHIBIT A**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF OREGON

IN THE MATTER OF THE SUBPOENA   :   Miscellaneous Case No. 05-9068
ISSUED TO DOUGLAS GELLER       :
                                         :   (No. 03-11465-DPW District Court of
                                         :   Massachusetts)

### DECLARATION OF GEORGE M. GOWEN

1.     I, George M. Gowen, am an adult individual.  I am a licensed attorney and maintain my office at Cozen O'Connor, 1900 Market Street, Philadelphia, Pennsylvania 19103.

2.     Along with other Cozen O'Connor attorneys and other co-counsel, I represent Vermont Pure Holdings in this matter and in the matter to which this matter relates, namely a Lanham Act case pending in the United States District Court for the District of Massachusetts, captioned <u>Vermont Pure Holdings, Ltd. v. Nestle Waters North America, Inc.</u>, No. 03-11465-DPW.

3.     I negotiated the terms of a joint proposed protective order with counsel for Nestle Waters North America ("Nestle"), Michael Haratz.

4.     Mr. Haratz asked that I incorporate a provision extending the parties' ability, under the order, to label discovery as "confidential" to discovery procured from third parties.

5.     When I asked Mr. Haratz to justify this additional term, he explained that Nestle required it to protect the confidentiality of information that would be produced by third parties, such as Douglas Geller.  He mentioned Mr. Geller's production specifically.

6.     Upon this explanation, I agreed to insert the requested term.

7.    I declare under penalty of perjury that the foregoing is true and correct.  Executed on March 28, 2005.

George M. Gowen III

**<u>EXHIBIT B</u>**

SCANNED

DATE: 3-11-05

BY: OMG

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

VERMONT PURE HOLDING, LTD.,

               Plaintiff

v.

NESTLÉ WATERS NORTH AMERICA,
INC.,

               Defendant

Civil Action No. 03CV11465DPW

## STIPULATION AND ORDER OF CONFIDENTIALITY

IT IS HEREBY STIPULATED AND AGREED between and among the parties
to this action, through their respective attorneys, that the Court may enter a Protective Order
containing the following terms and conditions:

## SCOPE OF THIS ORDER

1.      This Protective Order shall be applicable to all information produced by
any party pursuant to interrogatories, depositions, requests for production of documents, requests
for admissions or other discovery requests (whether formal or informal), and all information
provided by any party in connection with any evidentiary hearings or other proceedings
conducted during the course of this action.

## CONFIDENTIAL AND HIGHLY CONFIDENTIAL INFORMATION

2.      Any party producing or disclosing information in this action may
designate such information as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by
designating them in the manner set forth in Paragraph 3 below.  The designation of information

1

as "<u>CONFIDENTIAL</u>" shall be limited to information that the disclosing party in good faith believes contains trade secret or other confidential research, development or commercial information. The designation of information as "<u>HIGHLY CONFIDENTIAL</u>" shall be limited to extremely sensitive trade secret or other confidential research, development or commercial information which the disclosing party in good faith believes will result in competitive disadvantage if disclosed in this action. Information designated as "<u>CONFIDENTIAL</u>" <u>or</u> "<u>HIGHLY CONFIDENTIAL</u>" may only be used and disclosed as set forth in Paragraphs 5 to 10 below.

<b><u>MANNER OF DESIGNATION OF MATERIALS</u></b>

3.      A party may designate materials as "<u>CONFIDENTIAL</u>" or "<u>HIGHLY CONFIDENTIAL</u>" in the following manner:

a.      Documents or Things. "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" treatment may be obtained by typing or stamping "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" on the particular document or thing.

b.      <u>Interrogatories and Requests for Admissions</u>. In answering any Interrogatory, Request For Admission, or part thereof, a party may designate its answer as "<u>CONFIDENTIAL</u>" <u>or</u> "<u>HIGHLY CONFIDENTIAL</u>" by affixing thereto the legend "<u>CONFIDENTIAL</u>" or "<u>HIGHLY CONFIDENTIAL</u>." Such "<u>CONFIDENTIAL</u>" <u>or</u> "<u>HIGHLY CONFIDENTIAL</u>" Answers shall be made on separate pages from any other answers or portions thereof that are not designated as "<u>CONFIDENTIAL</u>" <u>or</u> "<u>HIGHLY CONFIDENTIAL</u>."

c.      <u>Testimony</u>. Any party hereafter giving testimony in this action, including but not limited to deposition testimony, may obtain "<u>CONFIDENTIAL</u>" <u>or</u> "<u>HIGHLY CONFIDENTIAL</u>" treatment therefor by designating, during the course of that testimony for which "<u>CONFIDENTIAL</u>" <u>or</u> "<u>HIGHLY CONFIDENTIAL</u>" treatment is desired, which testimony is claimed to be <u>CONFIDENTIAL</u> <u>or</u> "<u>HIGHLY CONFIDENTIAL</u>." The reporter shall separately transcribe and bind the testimony so designated as "<u>CONFIDENTIAL</u>" and/or "<u>HIGHLY CONFIDENTIAL</u>" and shall mark

2

the face of the separate bound transcript containing such testimony with the term "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." Such testimony may also be designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by giving written notice to the opposing party within twenty (20) days after receipt of the transcript of such testimony, setting forth the pages and lines of such transcript which are "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." To facilitate such designation by written notice, all transcripts shall be treated in their entirety as "HIGHLY CONFIDENTIAL" information for a period of thirty (30) days after a full and complete transcript is available. If, during the course of testimony, any party reasonably believes that the answer to a question will result in the disclosure of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information, all persons other than those persons entitled to receive such information pursuant to Paragraphs 6 and 7 hereof shall be excluded from the room in which the testimony is given.

4.      Typing or stamping the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" upon the first page of a collection of documents or things or answers which are bound or attached together in any manner shall have the effect of designating such collection in its entirety as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL"

## RESTRICTIONS ON DISCLOSURE OF DESIGNATED MATERIALS

5.      Unless authorized in writing by the producing party, all materials produced by any party in this action designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" are to be used solely for the purposes of prosecuting and/or defending this action.  Said materials designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall not be used for any other business, commercial, personal, competitive or other purpose.

6.      Except by prior Order of this Court after notice to the producing party's counsel, information designated as "CONFIDENTIAL" shall not be disclosed to any person other than:

        a.      the attorneys of record herein for the parties and those of their
                partners, associates and paralegals employed by said attorneys who

3

are assigned to and necessary to assist such attorneys in the preparation for trial and trial of this action;

b.  secretaries, stenographers and other office or clerical personnel employed by said attorneys and who assist them with respect to this action;

c.  the parties, officers or employees of the parties, to the extent deemed necessary by their respective attorneys of record for the preparation for trial and trial of this action;

d.  independent outside consultants or experts retained by the attorneys of record to assist in this action, to the extent deemed necessary by said attorneys for the preparation for trial and trial of this action;

e.  the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL" information;

f.  such other persons as may be consented to by the party designating such information as "CONFIDENTIAL" information; and

g.  the Court (including the Court having jurisdiction of any appeal).

7.  Except by prior order of this Court after notice to the producing party's counsel, information designated as "HIGHLY CONFIDENTIAL" shall not be disclosed to any person other than:

a.  the attorneys of record herein for the parties and those of their partners, associates and paralegals employed by said attorneys who are assigned to and necessary to assist such attorneys in the preparation for trial and trial of this action;

b.  secretaries, stenographers and other office or clerical personnel employed by said attorneys and who assist them with respect to this action;

c.  independent outside consultants or experts retained by the attorneys of record to assist in this action, to the extent deemed necessary by said attorneys for the preparation for trial and trial of this action;

4

    d.    the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "<u>HIGHLY CONFIDENTIAL</u>" information;

    e.    such other persons as may be consented to by the party designating such information as "<u>HIGHLY CONFIDENTIAL</u>" information; and

    f.    the Court (including the Court having jurisdiction of any appeal).

8.    Each person to whom information designated as "<u>CONFIDENTIAL</u>" or "<u>HIGHLY CONFIDENTIAL</u>" is disclosed, other than the Court, shall be informed of the terms of this Order and agree to be bound by it before disclosure to such person of any such information. Further, before any information designated as "<u>HIGHLY CONFIDENTIAL</u>" is disclosed to any individual, he or she must first agree in writing to be bound by the terms of this Order by execution of an "Assurance of Compliance" in the form attached hereto as Exhibit "A".

9.    Counsel shall maintain complete lists identifying all persons to whom any information designated as "<u>CONFIDENTIAL</u>" or "<u>HIGHLY CONFIDENTIAL</u>" is disclosed and the documents or other information so disclosed, and also shall maintain the written agreements required by Paragraphs 7 and 8. Such lists and agreements shall be available for inspection by counsel for the other party upon request. In the case of non-testifying, consulting experts to whom "<u>CONFIDENTIAL</u>" or "<u>HIGHLY CONFIDENTIAL</u>" information is disclosed, counsel of record need only certify to counsel for the other party, upon request, that those persons have agreed in writing to be bound by the terms of this Order.

10.    The failure of any party to object to the designation of information as "<u>CONFIDENTIAL</u>" or "<u>HIGHLY CONFIDENTIAL</u>" shall <u>not</u> be deemed an admission that such information qualifies for such designation. In the event any party disagrees with the designation of any information as "<u>CONFIDENTIAL</u>" or "<u>HIGHLY CONFIDENTIAL</u>,"

counsel shall attempt to resolve the disagreement on an informal basis.  If any party objects to said designation, said party shall notify the other party after receiving said designation.  If it is necessary to present the dispute to the Court for resolution, it shall be up to the designating party to move for an order upholding the confidentiality restrictions.  On such a motion, the burden shall be on the moving party or witness to demonstrate that the materials qualify for protection.  Unless and until this Court enters an order changing the designation of the information, it shall be afforded the treatment described in Paragraphs 5 through 10 herein.

11.    The restrictions set forth in Paragraphs 5 through 10 herein shall not apply to information that is or was public knowledge at or prior to disclosure in this action, or information that after disclosure becomes public knowledge other than by act or omission of the nondesignating party, agents, consultants, or attorneys.  Neither party hereto shall be bound by this stipulation as to any information which it possessed prior to this action, unless that information was obtained from the other party under circumstances requiring the first party to treat that information as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL".  Either party may designate information received by the other party from a non-party during the course of this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL".

12.    Nothing contained in this Stipulation and Order shall restrict or prevent any party to this action from disclosing or otherwise using its own documents and information which that party produces or discloses in this action.  Nothing contained in this Stipulation and Order shall prevent any person from making use of or disclosing information which was lawfully in his or her possession prior to receipt of such information from a producing party; appears in any issued patent or other published material available to the producing party's trade or business, other than by a breach of this Stipulation and Order, provided that where a combination of

6

information is disclosed and in combination asserted to be "<u>CONFIDENTIAL</u>" or "<u>HIGHLY</u>

<u>CONFIDENTIAL</u>" it shall not be deemed so available unless said combination is available in an

integrated form in any single patent or single publication; or was or after entry of this Stipulation

and Order obtained from a source or sources other than the producing party.  The failure of a

party producing information to designate such information "<u>CONFIDENTIAL</u>" or "<u>HIGHLY</u>

<u>CONFIDENTIAL</u>" shall <u>not</u> preclude such party from later applying to the Court for the entry of

a protective order.

       13.    Nothing in this Stipulation and Order shall or shall be construed to

prohibit any party from disclosing information and/or documents or things that it already

possesses and/or are in the public domain.  Likewise, the designation by a party of something as

"<u>CONFIDENTIAL</u>" and/or "<u>HIGHLY CONFIDENTIAL</u>" does not and shall not make any such

information document and/or thing a trade secret and/or confidential information under law or

any agreement.

<u><b>FILING AND USE IN COURT OF DESIGNATED MATERIALS</b></u>

       14.    (a)    In the event that any party seeks to file under seal any document,

pleading or brief (or portion thereof) based upon same referencing or containing any documents

or information designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," pursuant to

this Order and/or as required by paragraph 14(b) of this Order, said party shall also file, but

electronically, (i) a motion seeking leave to file said document, pleading or brief (or portions

thereof) under seal, and (ii) all such portions of the relevant motion, pleading or briefs other than

portions containing or referencing documents or information designated as "CONFIDENTIAL"

or "HIGHLY CONFIDENTIAL," pursuant to this Order.

       (b)    Notwithstanding the Order For Electronic Filing dated October 5,

7

2004, if any attorney files with or submits to the Court or any appellate court any (a) documents, answers, transcripts or things designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" pursuant to this Order or information derived therefrom or (b) any affidavits, memoranda, exhibits or other papers containing or making reference to any such "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" documents, answers, transcripts or things or any information contained therein, then such materials or portions thereof as contained "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information shall not be filed electronically, and shall be filed only in sealed envelopes on which shall be endorsed the caption of this action and a statement substantially in the following form:

> "CONFIDENTIAL"[and/or "HIGHLY CONFIDENTIAL] This envelope contains information that is subject to an Order entered by the Court in this action governing the use of CONFIDENTIAL [and/or HIGHLY CONFIDENTIAL] material. The envelope shall not be opened or the contents thereof displayed or revealed except by order of this Court.

Any material designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" which is filed under seal with the Court in the manner described in this paragraph shall be maintained under seal by the clerk and shall be made available only to the Court and to the attorneys for the parties until further order of this Court.

## THIRD-PARTY REQUEST FOR DESIGNATED MATERIALS

15.    If any party receives a subpoena or document request from a third party which purports to require the production of materials in that party's possession which have previously been designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by any other party to this action, the party receiving such subpoena or document request shall immediately: (a) notify the party who designated the materials as "CONFIDENTIAL" or

8

"HIGHLY CONFIDENTIAL" of the receipt of said subpoena or document request, and (b) shall not oppose any effort by the party which designated the material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" to quash the subpoena or obtain a protective order limiting discovery of such material.

## RETURN OF DESIGNATED MATERIALS

16.     Within ninety (90) days of conclusion of this action, including any and all appeals, all documents, answers, transcripts or other things or information designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," and all copies thereof, shall be returned to the attorneys for the party furnishing the same. In addition, all summaries or other materials containing or disclosing information contained in such documents, answers, transcripts or other things shall be destroyed at the conclusion of this litigation. This Order shall continue to be binding after the conclusion of this litigation. The United States District Court for the District of Massachusetts shall continue to retain jurisdiction over all persons and parties bound by this Protective Order for enforcement.

## APPROVAL OF STIPULATION AND ENTRY OF ORDER

17.     The parties hereby agree to submit this Stipulation to the Court for approval and entry as an Order of the Court.

Respectfully Submitted,

VERMONT PURE HOLDING, LTD.
By its Attorneys

By: _____
Kevin F. Berry (admitted *Pro Hac Vice*)
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
Tel. (215) 665-2000
Fax (215) 665-2013

Thomas M. Sobol BBO# 471770
HAGENS BERMAN, LLP
One Main Street, Fourth Floor
Cambridge, MA 02142
Tel. (617) 482-3700
Fax (617) 482-3003

Of Counsel:

Steve W. Berman
HAGENS BERMAN, LLP
1301 Fifth Avenue, Suite 2929
Seattle, WA  98101
Tel. (206) 623-7292
Fax (206) 623-0594

Garve W. Ivey, Jr.
IVEY & RAGSDALE
Post Office Box 1349
Jasper, AL  35502-1349
Tel. (205) 221-4664
Fax (205) 221-8484

10

NESTLÉ WATERS NORTH AMERICA INC.
By its attorneys

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.

By: _____
Martha J. Koster, BBO#277900
Kevin M. McGinty, BBO #556780
Benjamin L. Hincks, BBO#630685
One Financial Center
Boston, MA 02111
Tel. (617) 542-6000
Fax. (617) 542-2241

Of Counsel:

Jeffrey M. Garrod (Admitted Pro Hac Vice)
ORLOFF, LOWENBACH, STIFELMAN
& SIEGEL, P.A.
101 Eisenhower Parkway
Roseland, New Jersey 07068
Tel. (973) 622-6200
Fax (973) 622-3073

*March 14*
Dated: ~~February~~ __, 2005

SO ORDERED

Dated: _March 14, 2005_

_Douglas P. Woodlock_
Judge Woodlock

11

**EXHIBIT A**
**ASSURANCE OF COMPLIANCE**

STATE OF _____ )

                  ss.:

COUNTY OF _____ )


_____, being duly sworn, deposes and says:

That (s)he resides at _____, in the City/County of

and State of _____;

That (s)he has read the annexed Protective Order, dated _____, 200_, in the

action entitled Vermont Pure Holdings, Ltd. v. Nestlé Waters North America, Inc., No. 09-09686

Civil Action No. 03CV11465DPW, which currently is pending in the United States District

Court for the District of Massachusetts;

That (s)he is fully familiar with and agrees to comply with and be bound by the

provisions of that Protective Order; and

That (s)he will not divulge to persons other than those specifically authorized by the

Protective Order, and will not copy or use except solely for the purpose of this litigation, any

information designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL --

ATTORNEYS' EYES ONLY"; and

That (s)he consents to the jurisdiction of the United States District Court for the District

of Massachusetts for the purpose of enforcing said Protective Order, enjoining any anticipated

violation of the Protective Order or seeking damages for the breach of said Protective Order.

Sworn to before me this

_____ day of _____, 200_.

_____

                                   Notary Public

# **<u>EXHIBIT C</u>**



PHILADELPHIA
ATLANTA
CHARLOTTE
CHERRY HILL
CHICAGO
DALLAS
DENVER
HOUSTON
LAS VEGAS
LONDON
LOS ANGELES

**COZEN**

**O'CONNOR**

ATTORNEYS

A PROFESSIONAL CORPORATION

NEW YORK
NEWARK
SAN DIEGO
SAN FRANCISCO
SEATTLE
TRENTON
WASHINGTON, DC
WEST CONSHOHOCKEN
WICHITA
WILMINGTON

1900 MARKET STREET    PHILADELPHIA, PA 19103-3508    215.665.2000    800.523.2900    215.665.2013 FAX    www.cozen.com

February 8, 2005

**VIA FACSIMILE**

**Kevin F. Berry**
Direct Phone 215.665.4611
Direct Fax   215.665.2013
kberry@cozen.com

Jeffrey Garrod, Esquire
Orloff, Lauerbach Steifleman & Seigel
101 Eisenhower Parkway
Roseland, NJ 07068

Re:    <u>Vermont Pure v. Nestlé Waters North America</u>

Dear Mr. Garrod:

I received your February 3, 2005 letter.  I have the following response.

My proposal to submit the dispute over the subpoena issued from the District of Oregon to Judge
Woodlock, by motion or otherwise, was premised on the parties' consent.  Mr. Geller's attorney
agreed to the idea; I agreed to it; and, thus, I sought your consent to it.  It would only be after
obtaining your consent that I would approach the Court.  I do not know if the Court will agree to
resolve the dispute, but I do not intend to approach the Court without joint consent.  You did not
consent.  Therefore, I am forced to proceed in Oregon.  If you have changed your mind, please
let me know.

Our position on the service of the Oregon subpoena, the propriety of your conduct, and the
timeliness of and reasons for Mr. Geller's objections is clear.  I will explain to you, however, that
Federal Rule of Civil Procedure 34 allows a party receiving document requests to object to those
requests, placing the burden on the serving party to move to compel further response, much like
Rule 45 allowed Mr. Geller to do within 14 days of the subpoena.  A party may object to a
subpoena served on a different party, however, only by moving to quash that subpoena or for a
protective order.

I repeat that, no matter how Mr. Geller came to possess the document in question, the subpoena
commands the production of documents within his possession, custody, or control.  Please also
remember that this one document is not the reason for Mr. Geller's deposition.  We will take Mr.
Geller's deposition because he possesses information and documents concerning Defendant's
Poland Spring water.  Plaintiff has subpoenaed all the relevant documents in his possession,
custody, and control.  Given that this deposition and document production will occur, in Oregon,

Jeffrey Garrod, Esquire
February 8, 2005
Page 2

---

in any event, I fail to see why any of us should go to the significant expense and trouble inherent in your proposal, simply to resolve Plaintiff's right to receive one particular document. If Defendant or Atlantic Geoscience objects to any part of the production called for by the Oregon subpoena—which production we intend to move to compel—they would have asserted their rights in accordance with the Federal Rules of Civil Procedure.

Sincerely,

COZEN O'CONNOR

By:     Kevin F. Berry


KFB:jlm
cc:     Thomas M. Sobol Esq.
        Garve Ivey Esq.
        Benjamin L. Hincks, Esquire
        Laura Maffei, Esquire

Jeffrey Garrod, Esquire
February 8, 2005
Page 3

---

bcc:    George Gowen, III, Esquire
        Jared Littman, Esquire
        Melissa Scott, Esquire
        Whitney Whisenhunt, Esquire
        Barbara Melvin